**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JAYSON ROGERS**, individually and on behalf of all others similarly situated, | Case No.: 1:20-cv-554-PAG |
| *Plaintiff*, | Judge: Patricia A. Gaughan |
| *v.* | |
| **INTERSTATE NATIONAL DEALER SERVICES, INC.**, a Delaware corporation, and **JOHN DOE CORPORATION**, | |
| *Defendants*. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT INTERSTATE NATIONAL DEALER SERVICES, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**INTRODUCTION**

Defendant Interstate National Dealer Services, Inc. ("Dealer Services" or "Defendant") Motion to Dismiss is premised on a complete misunderstanding of the facts as pled in Plaintiff's complaint as well as a fundamental misunderstanding of the applicable law. Contrary to Dealer Services' flawed interpretation, Plaintiff's claim is properly predicated on either of two alternative theories of liability -- namely that Dealer Services can be held liable ***both*** directly ***and*** under a "vicarious liability" theory for robocalls placed by telemarketers on behalf of Dealer Services.

Tellingly, Dealer Services attempts to recharacterize Plaintiff's factual allegations as containing "confusingly similar" names. Defendant Interstate National Dealer Services, Inc.'s Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint

("Def. Mem.") at 6-7. Dealer Services has simply misread Plaintiff's Complaint, [1] wherein Plaintiff defined the shorthand "Dealer Services" in the first paragraph to mean "Interstate National Dealer Services, Inc.," [2] just as Plaintiff has done here. There is no confusion – Defendant's agent specifically told Plaintiff that they were **calling on behalf of Defendant**, described and offered an extended automobile protection plan **marketed exclusively by Defendant**, and offered **Defendant's website** if Plaintiff had any further questions or wanted to research the plan coverage being offered to him. *Id.* at 30.

Plaintiff's claims against Dealer Services are founded upon "on behalf of" liability, expressly authorized by the TCPA, which "extends beyond that available under common law agency-related principles." *In re Joint Petition Filed by DISH Network, LLC, et al. for Declaratory Ruling Concerning TCPA Rules*, CG Docket 11-50, 28 FCC Rcd. 6574, 6590, at ¶40, 2013 FCC LEXIS 2057 (2013) (the "*DISH* Ruling"). The TCPA, as implemented and interpreted by the FCC, holds an entity liable for ensuring that any telephone solicitation transmitted on its behalf is compliant: third party calls made on a company's behalf "are treated as if the company itself placed the call." *See In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991, Request of State Farm Mut. Auto. Ins. Co. for Clarification and Declaratory Ruling*, CG Docket 02-278, 20 FCC Rcd. 13664, 13667, at ¶7, 2005 FCC LEXIS 4628 (2005). [3] Mr. Rogers received a call "on behalf of" Dealer Services from a telemarketer who called him to sell him a

---

[1] References to Plaintiff's Complaint appear throughout this brief as "Compl. ¶__."
[2] *Id.* at ¶1.
[3] *See also In The Matter of Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling*, CG Docket 02-278, 23 FCC Rcd. 559, 565, at ¶10, 2008 FCC LEXIS 56 (2008) (the "*ACA* Ruling") (FCC recognizes that if a debt collector utilizes illegal robocalls, the creditor on whose behalf the debt collector was collecting is responsible for any violation of the TCPA).

specific automobile protection plan offered exclusively by Dealer Services. Compl. at ¶30. Dealer Services is thus directly liable under the TCPA. Alternatively, as detailed *infra*, Dealer Services could also be found liable under a vicarious liability theory, as expressly provided for by FCC interpretations of the TCPA.

Lastly, Dealer Services inappropriately attempts to inject into the record various self-serving statements it provided to the Better Business Bureau as alleged facts, without the benefit of discovery, and asks the Court to accept those statements for their truth.[4] On a motion to dismiss, that is simply not the correct analysis. *See, e.g. In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014) (noting that the Court may only take judicial notice "of the fact that [the corporation] filed [an SEC filing] and what that filing said, but [the Court] could not consider the statements contained in the document for the truth of the matter asserted, even at the motion-to-dismiss stage" (citations omitted)).

In any event, despite its emphatic attempts to wish this case away on the pleadings, the authorities in this Circuit routinely hold that TCPA cases just like this one – which involves Dealer Services campaign of illegal telemarketing to solicit new business – are maintainable on a class basis.[5] Not only do courts deny such motions to dismiss, but they *certify* TCPA cases, *after* appropriate discovery is had.[6]

As a result, disposing of this case -- in its infancy at the pleading stage -- would

---

[4] Def. Mem. at 4.

[5] *See, e.g., Allard v. SCI Direct, Inc.*, No. 16-cv-01033, 2017 WL 3236448 (M.D. Tenn. July 31, 2017); *Sheean v. Convergent Outsourcing, Inc.*, No. 2:18-cv-11532, 2019 WL 6039921 (E.D. Mich. Nov. 14, 2019).

[6] *See, e.g., Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 2014 U.S. Dist. LEXIS 16866, 67 (N.D. Ill. Feb. 11, 2014); *Saf-T-Gard Intern., Inc. v. Vanguard Energy Servs.*, LLC, No. 12 C 3671, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012); *Mussat, M.D., S.C. v. Global Healthcare Resource, LLC*, No. 11 C 7035, 2013 U.S. Dist. LEXIS 35107 (N.D. Ill. Mar. 13, 2013).

contravene this well-settled precedent and impermissibly deny redress to Plaintiff and the Class. Defendant's Motion should be denied in its entirety.

## THE COMPLAINT

Dealer Services (or a third party authorized by Dealer Services) engaged in unsolicited telemarketing via an artificial or prerecorded voice, which enabled Dealer Services to make calls *en masse* to the wireless telephones of random individuals without their prior express written consent. Compl. ¶8. Dealer Services, which offers extended protection plans for vehicles, did so to solicit new customers for its products and services. Compl. ¶9.

Plaintiff Jayson Rogers is a victim of Dealer Services' solicitation scheme. On September 25, 2019, Mr. Rogers received an unauthorized call to his wireless telephone which used an artificial or prerecorded voice. Compl. ¶¶27-28. Mr. Rogers' cellular phone number has been registered on the National Do Not Call Registry since November 4, 2016.[7] When Mr. Rogers answered the call, he did not speak to a live person. Compl. ¶¶ 27-28. Rather, Mr. Rogers received a generic prerecorded message, regarding extended vehicle protection plans. *Id*. When Mr. Rogers pressed "1" to determine who the caller was, and finally did get a human on the phone, he learned that the call was placed by a telephone representative of an unknown telemarketer, John Doe Corporation. The call was placed on behalf of Dealer Services and its purpose was to entice Mr. Rogers into obtaining an extended protection plan offered by Dealer Services. Compl.

---

[7] Though not mentioned in Plaintiff's Complaint, as he has not alleged a violation of the Do Not Call provisions of the TCPA, Plaintiff's registration can be confirmed via https://www.donotcall.gov/, the FTC's National Do Not Call Registry website, which as a government website is subject to judicial notice.

¶30. Mr. Rogers never provided prior express written consent to receive the prerecorded call on September 25, 2019.

The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, CC Docket No. 92-90, 10 FCC Rcd. 12391, 12397 (1995). In the *ACA* Ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *ACA* Ruling, 23 F.C.C. Rcd. 559, 565, at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

Here, Plaintiff alleges that Dealer Services: (1) is legally responsible for ensuring that the company that made the calls complied with the TCPA, even if Dealer Services did not itself make the calls; (2) knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls; (3) accepted the business from illegal calls from the company that made the calls, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA; (4) has continued to fail to monitor the third parties operating on its behalf ; (5) "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency; (6) maintained interim control over the actions of the party that made the calls; (7) had absolute control over whether, and under what circumstances, it would accept a customer; (8) had day-to-day control over the actions of the calling party, including the ability to prohibit it from using a pre-recorded message to contact potential

customers of Dealer Services; (9) restricted the geographic location of the calls made by the company promoting Dealer Services; (10) gave interim instructions to the company that made the calls by providing the volume of calling and contracts it would purchase; (11) instructed the calling party to transfer potential customers over to a third-party verification company that Dealer Services had hired to complete the sign-up process. Compl. ¶¶ 45-55. In other words, Dealer Services allows its vendors to bind Dealer Services in contract following an illegal telemarketing call, such as the one Plaintiff received. Compl. ¶ 56. These factual allegations go far beyond mere "threadbare pleading" (Def. Mem. at 7) of the elements of a TCPA claim; rather, they form the *factual predicate* for a finding of direct liability.

Because of these circumstances, Mr. Rogers alleges that Dealer Services violated the TCPA and brings a claim on behalf of himself and the following class:

> **Robocall No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendants (or a third person acting on behalf of Defendants) called; (2) on the person's cellular telephone number using an artificial or prerecorded voice; and (3) for whom Defendants lacked prior express consent to call that cellular telephone number at the time the call was made.

Compl. ¶58.

## LEGAL ARGUMENT

### I.  MR. ROGERS' TCPA CLAIM IS LEGALLY SUFFICIENT

#### A.  Applicable Pleading Standards

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of

what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide "enough facts to state a claim [for] relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the complaint's factual content is sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Probability is not required, but there must be more "than a sheer possibility that a defendant has acted unlawfully." *Id.* In analyzing a defendant's motion, the Court must "accept all factual allegations as true," construing the complaint "in the light most favorable to the plaintiff[s]." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). Mr. Rogers' Complaint easily meets applicable pleading requirements and contains sufficient factual detail to give Dealer Services "fair notice" of his claim.

### B.     The Complaint Satisfies Federal Pleading Requirements

Aimed at preserving privacy, the TCPA was enacted in recognition of consumer "outrage[] over the proliferation of intrusive, nuisance calls to their homes from telemarketers."[8] The Act specifically prohibits both autodialed calls and calls using an artificial or prerecorded voice, when made to cell phones, regardless of their content. 47 U.S.C. § 227(b)(1)(A)(iii).[9] To state a claim under this section, a plaintiff must allege that a defendant (or a third-party on defendant's behalf): (1) made a call (other than for emergency purposes or with prior express consent); (2) using "any automatic telephone

---

[8] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.
[9] There are, of course, certain limited exceptions to this prohibition, none of which are relevant here.

dialing system *or* an artificial or prerecorded voice"; (3) to a cellular phone. *Id.* (emphasis added).

When Mr. Rogers answered the September 25, 2019 call, he was greeted by an "artificial or prerecorded voice" conveying a generic message. These allegations sufficiently state a violation of the TCPA. *See, e.g., Meredith v. United Collection Bureau, Inc.*, No. 1:16-cv-1102, 2018 WL 1782854 (N.D. Ohio Apr. 13, 2018); *Charvat v. LE Energy, LLC*, No. 2:19-cv-1325, 2019 WL 3891830 (S.D. Ohio Aug. 19, 2019); *Shelton v. Direct Energy*, No. 1:19-cv-0081, 2019 U.S. Dist. LEXIS 150559 (N.D. Ohio Aug. 27, 2019).[10]

Dealer Services does not dispute that someone called Mr. Rogers, that the call was made without Mr. Rogers' prior express consent, that the call was placed to Mr. Rogers' cellular phone or that Mr. Rogers was solicited to purchase an extended vehicle protection plan offered by Dealer Services. Instead, Dealer Services attacks the specificity of Mr. Rogers' allegations, arguing that he is somehow required to plead the details concerning the exact telemarketers Dealer Services used in its calling scheme and, incredibly, the details regarding Dealer Services' agency relationship with those telemarketers (the kind of information entities like Dealer Services who engage in telemarketing campaigns actively attempt to conceal, for obvious reasons). Mr. Rogers could not possibly supply these details in his pleading. Nor is he required to do so. *See e.g., Brown v. Collections Bureau of Am., Ltd*, 183 F. Supp. 3d 1004, 1005 (N.D. Cal.

---

[10] Dealer Services reliance on *Whitacre* is entirely misplaced. Def. Mem. at 2. As noted by Judge Pearson, the parties were in contractual privity in Whitacre, the plaintiff failed to allege a lack of consent, and there was in fact extensive evidence that consent existed. *Whitacre v. Nations Lending Corp.*, No. 5:19-cv-809, 2019 WL 3477262 (N.D. Ohio July 31, 2019). None of those conditions exist in the instant case.

2016) ("A plaintiff need not somehow have inside knowledge of a defendant's operations and equipment to survive dismissal under Rule 12(b)(6), rather, he or she merely must proffer factual allegations that support a reasonable inference that [the TCPA was violated].") Ferreting out the exact nature and extent of relationships between and among lead generators and product sellers is properly left to the discovery process.

### 1. Mr. Rogers' Allegations That The Call Was Made "On Behalf Of Dealer Services" Are Sufficient to Withstand Dismissal

### A. Dealer Services' Direct Liability

Dealer Services argues that Mr. Rogers' allegations do not establish the liability of Dealer Services for the unnamed John Doe telemarketing company that placed calls on Dealer Services' behalf, demanding that Plaintiff identify in his Complaint the entities Dealer Services used to physically place the calls, including specific allegations that Dealer Services controlled or directed the work of its telemarketers. Def. Mem. 7-8. These arguments ignore the express language of the TCPA, the regulatory rulings of the FCC[11] and the precedent in this District.

On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Dealer Services may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases

---

[11] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).

substantially more expensive and less efficient, since consumers (or law
enforcement agencies) would be required to sue each marketer separately
in order to obtain effective relief. As the FTC noted, because "[s]ellers
may have thousands of 'independent' marketers, suing one or a few of
them is unlikely to make a substantive difference for consumer privacy."

*DISH* Ruling, 28 FCC Rcd. at 6588 ¶ 37 (2013) (internal citations omitted). More

specifically, the *DISH* Ruling held that, even in the absence of evidence of a formal

contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the

calls. *Id.* at 6586 ¶ 34.

The *DISH* Ruling further clarifies the circumstances under which a telemarketer

has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows
the outside sales entity access to information and systems that normally
would be within the seller's exclusive control, including: access to
detailed information regarding the nature and pricing of the seller's
products and services or to the seller's customer information. The ability
by the outside sales entity to enter consumer information into the seller's
sales or customer systems, as well as the authority to use the seller's trade
name, trademark and service mark may also be relevant. It may also be
persuasive that the seller approved, wrote or reviewed the outside entity's
telemarketing scripts. Finally, a seller would be responsible under the
TCPA for the unauthorized conduct of a third-party telemarketer that is
otherwise authorized to market on the seller's behalf if the seller knew (or
reasonably should have known) that the telemarketer was violating the
TCPA on the seller's behalf and the seller failed to take effective steps
within its power to force the telemarketer to cease that conduct.

*Id.* at 6592 ¶ 46.

The call that Mr. Rogers received is undeniably a "telephone solicitation" made

"on behalf of" Dealer Services under the TCPA. Pursuant to the TCPA and the FCC's

regulations and interpretive statements, *regardless* of who actually made the call, it is

incumbent on Dealer Services to ensure the call complies with the TCPA. Because the

responsibility rests squarely with Dealer Services, Plaintiff has stated a claim against Dealer Services. Any contrary interpretation would "frustrate the TCPA's overriding purpose," because then a "party could benefit from violations of the TCPA with impunity, so long as the task of actually making the phone calls were delegated to another entity." *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925, 2011 U.S. Dist. LEXIS 77457, *3-4 (N.D. Ill. July 18, 2011). Further, a defendant's staunch denials that "it specifically forbade its authorized dealers from violating the TCPA and other laws...is a factual matter that cannot be resolved on a Rule 12(b)(6) motion." *Id.* at *4.

Dealer Services' lament that Plaintiff has failed to put it on notice of the claims against it and reliance on *Seri*[12] is inapposite. Def. Mem. at 5. Rather than a supposed "shotgun" pleading, Plaintiff has articulated (to the best of his ability without the benefit of discovery) the *who* (Dealer Services and their unknown agent),[13] *what* (an unlawful prerecorded call),[14] *where* (on Plaintiff's cell phone),[15] *when* (September 25, 2019 at 11:42 am),[16] and *why* (to sell Plaintiff an extended vehicle protection plan offered by Dealer Services).[17] Plaintiff has plainly met his pleading burden at this stage of the litigation.

### B.  Dealer Services' Vicarious Liability

Alternatively, even if Mr. Rogers were to proceed against Dealer Services on a vicarious liability theory, as Dealer Services asserts, he is not required to supply the exact

---

[12] *Seri v. CrossCountry Mortg., Inc.*, No. 1:16-cv-01214, 2016 WL 5405257 at *4 (N.D. Ohio Sept. 28, 2016).
[13] Compl. ¶¶27-30.
[14] *Id.* at ¶¶27-28.
[15] *Id.* at ¶27.
[16] *Id.*
[17] *Id.* at ¶¶28-30.

details concerning Dealer Services' unnamed telemarketers. To the contrary, the FCC has issued a specific pronouncement in its seminal *DISH* Ruling that: "[n]eedless to say, *nothing* in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the seller's behalf." *See DISH* Ruling, 28 FCC Rcd. 6574, 6593, at ¶46, fn 139 (emphasis added). Plaintiff has reasonably alleged that the call was made on Dealer Services' behalf -- the telemarketer who called him *expressly said so*. Compl. ¶ 30.

Dealer Services attempts to recharacterize Plaintiff's factual allegations as containing "confusingly similar" names. Def. Mem. at 6-7. Dealer Services has simply misread Plaintiff's Complaint, wherein Plaintiff defined the shorthand "Dealer Services" in the first paragraph to mean "Interstate National Dealer Services, Inc.,"[18] just as Plaintiff has done here. There is no confusion – Defendant's agent specifically told Plaintiff that they were *calling on behalf of Defendant by name*, described and offered an extended automobile protection plan *marketed exclusively by Defendant*, and offered *Defendant's website* if Plaintiff had any further questions or wanted to research the plan coverage being offered to him. *Id.*

Dealer Services reliance on *Reo*, *Seri, Vitaminerals, ARCare,* and *Bedient* are all misplaced. Def. Mem. at 3, 5-9. As noted by Judge Nugent, the sum total of the vicarious liability allegations in *Reo* were a mere two paragraphs, even after twice amending the complaint and conducting more than a year of discovery. *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14-cv-1374, 2016 WL 1109042 (N.D. Ohio March 18, 2016). In *Seri*, Judge Polster noted that "in fact, Seri does not even allege that CrossCountry products or

---

[18] *Id.* at ¶1.

services were offered for sale during any phone calls." *Seri v. CrossCountry Mortg., Inc.*, No. 1:16-cv-01214, 2016 WL 5405257 at *4 (N.D. Ohio Sept. 28, 2016). Plaintiff has unambiguously alleged that a product or service of Dealer Services was offered for sale during the call at issue. In *Bedient*, Judge Gwin dismissed a single defendant, not the entire case, and did so entirely on the basis that a parent company, without specific allegations giving rise to that entity's liability, is not liable for the acts of a subsidiary. *Bedient v. Safe Sec. Inc.*, No. 1:16-cv-02256, 2017 WL 89343, at *5 (N.D. Ohio Jan. 10, 2017). The *Vitaminerals*[19] case is entirely irrelevant – it is a junk fax case and, as the Sixth Circuit has noted, the FCC's *DISH* Ruling rested largely on the definitions of the terms "telemarketer" and "seller." *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015). But those terms "are not used in the sections of the TCPA and accompanying regulations that apply to unsolicited fax advertisements." *Id.* The *DISH* Ruling is consequently "inapplicable to the fax transmissions at issue here." *Id.* Likewise, a case where the issue was whether a party was a "sender" under an entirely different section of the TCPA has no bearing on the instant case.[20]

Dealer Services fails to advise the Court that agency and vicarious liability issues are proper subjects of discovery, and consumers can and should acquire "evidence of these kinds of relationships." "*See DISH* Ruling, 28 FCC Rcd. 6574, ¶46, at 19- 20; *see also*, *Desai*, 2011 U.S. Dist. LEXIS 77457, at *6 (finding agency determinations too fact-

---

[19] *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd.*, No. 5:16-cv-2183, 2017 WL 27263 (N.D. Ohio Jan. 3, 2017).
[20] Though Defendant also cites *ARcare* as additional support for the proposition that one entity cannot be held liable for the actions of another, (Def. Mem. at 7), they have disingenuously failed to inform the Court that Judge Carr dismissed the matter without prejudice and denied the subsequent motion to dismiss the amended complaint. *See ARcare, Inc. v. Centor U.S. Holdings, Inc.*, 272 F.Supp.3d 1015 (N.D. Ohio 2017).

13

sensitive to merit dismissal). Mr. Rogers is not in a position at the pleading stage to know the exact relationship between Dealer Services and its marketing affiliates (Def. Mem. at 6-9) and should be afforded the opportunity to take discovery concerning their activities, as directed by the FCC. Indeed, Dealer Services' vicarious liability argument just confirms that Defendant's motion is groundless and this case should proceed.

## **<u>CONCLUSION</u>**

For all the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion be denied in its entirety.

Respectfully submitted,

**JAYSON ROGERS**, individually and on behalf of a Class of similarly situated individuals

Dated: May 29, 2020

By:   /s/Adam T. Savett
       One of Plaintiff's Attorneys

Adam T. Savett (VA73387)
adam@savettlaw.com
**Savett Law Offices LLC**
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

*Attorneys for Plaintiff and the Putative Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT INTERSTATE NATIONAL DEALER SERVICES, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT adheres to the page limitations set forth in Local Rule 7.1(f).

*/s/ Adam T. Savett*
 Adam T. Savett

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2020, a copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT INTERSTATE NATIONAL DEALER SERVICES, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

/s/ *Adam T. Savett*
Adam T. Savett
*Attorney for Plaintiff*
